Van Alen *v.* Illinois Central R. R. Co.

# VAN ALEN *v.* ILLINOIS CENTRAL R. R. CO.

September, 1866.

[Affirming 7 *Bosw.* 515.]

Defendants, a railroad corporation, in soliciting a loan of money, offered to give lenders their bonds, and the privilege of becoming stockholders in the company to half the amount of their loan. Plaintiff subscribed to the loan and received a provisional certificate declaring him to be entitled to the scrip certificates for shares of stock after a certain day fixed. At the bottom of the certificate was a memorandum, stating that the exchange of the provisional certificates for the scrip certificates was "limited to 1st January, 185 ." The year was intentionally left blank, but by a vote of the company was afterward fixed at 1855. In 1857, plaintiff having paid up the whole amount of his subscription to the loan, and having offered to pay all installments that had been called on the stock with interest thereon, demanded the stock of the company which was refused. *Held,* that having accepted the terms offered by the company, and complied with all the conditions in regard to the loan, his right to the stock became absolute and was not cut off by the notice on the provisional certificate.

*It seems* it would have been the same if the date had been filled in when the certificate was issued.

James H. Van Alen sued the Illinois Central R. R. Co. in the N. Y. superior court on these facts. In January, 1857, plaintiff demanded from defendants nine hundred and seventy-five shares of their scrip stock, claiming a right thereto, according to the terms of "provisional certificates" for that amount of stock, then held by him and presented to defendants. At the same time he offered to pay defendants all installments that had been called upon the stock demanded, with all interest due. Defendants refused to issue or deliver the stock to plaintiff, and this action was brought for damages. Plaintiff had a verdict and judgment for the difference between the par of the stock and its market value at the time of plaintiff's demand and defendants' refusal.

*The superior court,* at general term, affirmed the judgment; holding that the only sense in which the provisional certificates were conditional was that they required payment of all

the installments as a condition of the right to demand stock, and that when that condition had been fully performed, the right to demand and receive the stock continued until it was terminated by a tender of performance by the company, and a demand of payment of any assessments then duly made, and a refusal of the subscriber to accept and pay, or by some other act to which he was a party. Reported in 7 *Bosw.* 515.

Defendants appealed.

*Charles Tracy,* for defendants, appellants.—The provisional stock certificates were the contracts between plaintiff and defendants, in which were merged all previous negotiations, and dealings. Kain *v.* Old, 2 *Barn. & C.* 627–634 ; *Story on Cont.* § 671 ; *Chitty on Cont.* 90, c. 1 § 2, subd. 3. The stock certificates resemble a bond with a condition. *Hurlst. on Bonds,* 10. The words of the defeasance are the words of the contractee, the plaintiff, and are to be construed most favorably for the contractor, the defendant. Butler *v.* Wigge, 1 *Saund.* 66 ; 2 *Salk.* 95–118 ; Turner *v.* Goodwin, 10 *Mod.* 154. The figures " 185 " are senseless and to be rejected. 1 *Saund.* 66 *a,* note 1 ; Jiggon *v.* Purchase, *Jones,* 140. These figures being struck out there is no year mentioned, and the 1st of January means the next first of January. It is like a promise to do a thing or pay a sum on the first day of November ; in which case, without expressing it, November next is meant. Lewkner *v.* Smallwood, (12 *Jac.*) 1 *Rolles Abr.* 444, " condition ; " *T.* 3 *Vin. Abr.* " condition," *T. b.* 3 ; Price *v.* Coa, 1 *Rolles Abr.* 442, " condition," *M.* 3 ; Anon. 3 *Leonard,* 7 (6 *Eliz.*) *Vin. Abr.* " condition," *T. b.* 8. Witney *v.* Crosby, 3 *Caines,* 89 ; Kelly *v.* Gilmer, 9 *Foster,* (*N. H.*) 385, 390 ; Turner *v.* Roby, 7 *J. J. Marshall,* 209–211 ; Prefrot's Case, *Cro. Jac.* 646.

*William M. Evarts,* for plaintiff, respondent.—I. By the provisional certificates the defendants agreed that *on and after October* 1, 1852, he having lent them all the money he agreed to, plaintiff should be entitled to nine hundred and seventy-five shares of their stock at par, which they contracted to deliver to him on demand. II. The privilege to subscribe to the stock

was unlimited as to time. The plaintiff can not be affected by the incomplete N. B. at the bottom of the certificate. The company had no power to cut off plaintiff's stock right by a notice of any kind, even if the N. B. had been filled up it would have been only a notice, and it was impossible for the company thus to clear itself of a perfect obligation. The only way in which the company could rid themselves of this stock obligation was by a tender of the shares and demand of acceptance or refusal.

BY THE COURT.—WRIGHT, J. [After stating facts.]—It is not claimed that the measure of damages is objectionable, if the plaintiff could recover at all. The sole question, therefore, is as to the defendants' liability. If the plaintiff, at the time of the demand, was entitled to nine hundred and seventy-five shares of the defendants' capital stock at par, which they refused to issue or deliver to him, the judgment is right. On the contrary, if he had no title or right to the stock, the judgment on the special verdict ought to have been given for the defendants.

The case, upon the facts admitted and appearing by the special verdict, seems to me to be a plain one, and that but little more than a statement of them is requisite. The defendants, in June, 1852, desiring to borrow $5,000,000 on their bonds to construct their railway, issued proposals for a loan to that amount to be taken in London. The prospectus set forth that they had authorized their London agents to negotiate for the amount in their bonds, bearing interest at the rate of six per cent. per annum, payable half-yearly in London; which bonds would be issued in sums of $500 and $1,000 each, at a certain rate of exchange. Payments for these bonds, or deposits by lenders of the moneys for them, were proposed to be made at various periods; the first deposit, July 1, 1852, and the remaining deposits or installments at intervals of three months from that date, and ending on October 2, 1854; but the installments might be anticipated by advancing the whole subscription, which would entitle the subscriber to interest at six per cent. per annum from the date of payment. On the payment of the first deposit on the bonds, "provisional certificates" to bearer

would be issued, and, on the remaining payments being completed, the provisional certificates would be exchanged for the bonds. The prospectus in question, after thus giving the terms of such loan, stated that the company would also create a share capital, divisible into shares of $100 each, and went on to say : " It is proposed to give the privilege to subscribers of the loan of $5,000,000, now offered, to become shareholders therein for half of that subscription ($2,500,000), and as it can hardly be doubted that the bonds will be paid off by means of the sale of lands, there is every probability that the railroad will be constructed without any call upon the share capital. A small deposit may be required on the shares, and these shares will thus become an actual bonus, and entitle the holder to a participation in all the profits of the line." It was further stated that a banker's receipt would be given on payment of the first deposit on the bonds, which would be exchanged for the "provisional certificates" as soon as they could be obtained from America; and at the same time a further "provisional certificate," entitling the bearer, in addition, to fifty per cent. on the amount of his subscription to the bonds, in the capital stock of the company, would be delivered to him. The "provisional certificates" would be exchanged for scrip shares on payment of the last installment on the bonds."

The plaintiff subscribed for $300,000 of the loan as thus proposed ; paying the first installment in London, and the remaining installments in New York, in pursuance of arrangements made with the defendant. About October 1, 1852, on paying the second installment on his subscription, he received from the defendants three hundred "provisional certificates " for bonds of $1,000 each. The counsel for the defendants errs in his statement that these were the bonds themselves delivered to and accepted by the plaintiff. They were the instruments called a "provisional bond certificate," contemplated by the proposals, that the subscribers to the loan were to receive after depositing the first installment, and were identical in form with those received by other subscribers. Each contained a stipulation that " after the payment of the last installment they would be exchanged for the definitive construction bonds." At the same time, the plaintiff received from

the defendants, forty-three "provisional certificates" for stock, amounting to nine hundred and seventy-five shares. These provisional stock certificates bore date August 16, 1852, were signed by the defendants' president and secretary, and, after specifying the amount and number of the bonds subscribed for, were in this form: "This certifies that the bearer hereof will be entitled, on and after the first day of October next, to scrip certificates for (a specified number, corresponding with the one-half of the bonds referred to) shares of $100 each, in the capital stock of seventeen millions of dollars of the Illinois. Central Railroad Company, on presentation hereof, at the Messrs. Haywood, Kennards & Co., Bankers, London. Provided all the installments on the subscription for the bonds, numbered as above, shall then have been fully paid up." At the bottom of each of the stock certificates, thus declared, and below the signatures of the officers of the company, was this memorandum: "N. B. The exchange of the provisional certificates for the scrip certificates is limited to 1st January, 185 ." The plaintiff anticipated the payments of the installments on the loan, paying the last in January, 1853. In January, 1857, he presented to the defendants the provisional stock certificates issued to and held by him (offering to pay them all installments that had been called on the stock, with interest thereon), and demanded his scrip. They refused to issue or deliver the stock to him.

In view of these facts, I see no ground for any defense. The defendants, soliciting a loan of money, proposed to give to lenders these bonds, bearing interest at six per cent. per annum, payable at a certain period, and also give them the privilege to become stockholders to the amount of half their subscriptions, promising them, upon paying in the first installment of the loan (which was proposed to be paid in installments), certificates entitling the bearer to that amount in their capital stock, which certificates would be exchanged for scrip shares on payment of the last installment. The plaintiff subscribed for $300,000 of the loan. The proposals and an acceptance thereof by a subscription to the proposed loan constituted the original contract between him and the company. The terms of this contract were that the defendants should pay him interest,

and should give him, also, an open, unrestricted privilege to subscribe for their capital stock, at par, whenever he desired to do so. The claim that there was only a right of election, on a fixed date, given to subscribers, whether they would or would not take stock, is not maintainable. It is not a proper construction of the contract created by the proposals and acceptance of them, that the option to take stock was to be exercised on payment (that is, at the time of payment) of the last installment of the loan. When the contract was reduced to certainty, on October 1, 1852, by the issue of the provisional bonds, and the provisional certificates, no such condition of election, on a fixed day, was prescribed. The provisional bond certificate declared that, "after the payment of the last installment, these provisional certificates will be exchanged for the definitive construction bonds," and the provisional certificates of stock declared "the bearer hereof will be entitled, on and after the 1st day of October next, to scrip certificates for shares." The right to stock, after October 1, 1852, became precisely as absolute, as the right to bonds, after paying in the last installment of the loan. If it were argued that the subscriber had only a right of election to take stock, which he forfeited after a certain date, it must be equally true that he had only a right of election to take bonds, which he forfeited in the same way if he did not take them.

I repeat that I regard the case as a plain one. The plaintiff, by subscribing to the loan solicited by the defendants, purchased, for a valuable consideration, the stock issuable to him as such subscriber, upon the single condition that, before it was so issued, he should have paid in to the defendants the amount of his subscription. Whether the right thus acquired was an actual title to stock, of which the provisional certificate was a sufficient document, or a right to the stock obligatory or optional, such right could be determined, like every other right, only by contract between the parties, or by judgment against the plaintiff.

There is no ground for a pretense that his rights can be affected by the incomplete memorandum at the foot of the stock certificate. This was not filled up with any date in any of the forty-three certificates held by the plaintiff. These

certificates were issued under a resolution of the company, adopted November 17, 1852, and when issued they had not determined the filling up of the date ; nor did they determine it until March, 1854. Meantime, they had issued these to the plaintiff with the date left blank intentionally. But the company had no power or right to cut off the plaintiff's stock right by a *notice* of any kind. The delivery and acceptance of these certificates might make a contract, but, if this date had been filled in, the plaintiff might have refused to accept them Even if it had been filled up, and the plaintiff had accepted them thus, it would have had no more effect than a notice, and it was impossible for the company thus to clear itself of a p rfect obligation. I am of the opinion that the judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.